```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
SYDERIA A. ASBERRY,                                               :
                                                                  :
                         Plaintiff,                               :      14-CV-69 (JMF)
                                                                  :
            -v-                                                   :      OPINION AND ORDER
                                                                  :
HARTFORD LIFE AND ACCIDENT INSURANCE                              :
COMPANY, et al.,                                                  :
                                                                  :
                         Defendants.                              :
                                                                  :
------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/27/2015

JESSE M. FURMAN, United States District Judge:

Plaintiff Syderia A. Asberry brings this action against Defendants Hartford Accident Insurance Company, the Group Long Term Disability Plan for Employees of JP Morgan Chase Bank, and JP Morgan Chase Bank (together, "Hartford"), appealing Hartford's decision to terminate her disability benefits pursuant to Section 502(a)(1)(b) of the Employee Retirement and Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(b).  The parties' cross-motions for summary judgment are now before the Court.  For the reasons that follow, Hartford's motion for summary judgment is GRANTED, Asberry's motion is DENIED, and the Complaint is dismissed.

## BACKGROUND

The following facts, taken from the Administrative Record, are viewed in the light most favorable to the non-movant.  *See, e.g.*, *Spiegel v. Schulmann,* 604 F.3d 72, 77, 81 (2d Cir. 2010); *Griffin v. New York State Nurses Ass'n Pension Plan & Benefits Fund*, 757 F. Supp. 2d 199, 202 (E.D.N.Y. 2010).  On March 15, 2006, Plaintiff, then an employee with JPMorgan Chase Bank, underwent thoracic spinal fusion surgery to treat her scoliosis.  (Administrative

Record ("AR") 57, 1003). The surgery left her with significant complications, including chronic back pain. (*Id.* at 681-82). Shortly after the surgery, Hartford, which administers JP Morgan's benefits plan, approved Asberry for short-term disability benefits through May 2006 and then for long-term benefits through September 2012. (Pl.'s Resp. Defs.' Rule 56.1 Statement (Docket No. 34) ("Defs.' SOF") ¶¶ 14-16). Hartford concluded that Asberry was unable to perform "any occupation" for which she was qualified. (AR 89).

In August 2011, Plaintiff made a statement that indicated to Hartford that she was able to garden and that she served as the president of her local community association — activities that Hartford considered potentially incompatible with an "any occupation" disability. (Defs.' SOF ¶ 17; AR 137-38, 736). Her file was referred to Hartford's special investigations unit, which engaged a third-party vendor to gather surveillance. (Defs.' SOF ¶¶ 22-23; AR 137). The vendor surveilled Asberry over a two-day period in October 2011 (Defs.' SOF ¶ 24), during which it reported observing Asberry carrying grocery bags, cleaning up outside her apartment, walking her dog, and attending a community meeting. (AR 426-28).

Following the surveillance, Hartford sent a request for clarification of Asberry's functional abilities to her treating physician, Dr. Simonetta Sambataro. (*Id.* at 139-40). Over the course of the next several months, Hartford gathered information from Asberry's various physicians, including Dr. Sambataro, and had its special investigations unit conduct an in-person interview of Asberry. (Defs.' SOF ¶¶ 30-35, 39-43, 46). In June 2012, Hartford sought an independent medical examination ("IME") of Asberry. (AR 499). At Hartford's request, Dr. Robert DePorto reviewed various medical records compiled by Hartford and conducted a physical examination of Asberry on June 27, 2012. (Defs.' SOF ¶¶ 51-52; AR 501-04). Based on his review of her records, including the surveillance footage, and his independent

examination, Dr. DePorto concluded that Asberry was capable of "working in a sedentary capacity" and provided parameters for that definition, including sitting no more than six hours a day, standing no more than two hours a day, lifting no more than ten pounds at a time, and occasionally carrying small items such as office files. (Defs.' SOF ¶ 53; AR 683-84). Hartford then commissioned an employability analysis report that identified two occupations — Sales Manager and Merchandise Manager — that are consistent with Plaintiff's physical limitations, educational background, and salary requirements. (Defs.' SOF ¶¶ 57-59; AR 386-99).

In September 2012, a Hartford investigative specialist reviewed Asberry's file, including the surveillance report and the submissions by Drs. DePorto and Sambataro, and concluded that she did not qualify for long-term disability benefits. (AR 89-91). Accordingly, Hartford notified Asberry that it was terminating her benefits, effective September 12, 2012, and provided a summary of its investigation. (*Id.* at 212-18; Defs.' SOF ¶ 63). In October 2012, Asberry notified Hartford of her intention to appeal the decision; she then filed her appeal in May 2013. (AR 442-51, 647). Asberry claimed that Hartford's termination was improper for several reasons, including that Hartford improperly accepted Dr. DePorto's opinion over that of Dr. Sambataro (*id.* at 445-47) and that the surveillance footage was not a complete picture of Asberry's day (*id.* at 444-45).

In July 2013, Hartford assigned an appeals specialist to review Asberry's case. (Defs.' SOF ¶ 86). The specialist arranged for Dr. Steven Lobel to conduct a peer review of Asberry's files. (AR 69-70, 76). The specialist asked Dr. Lobel to address three issues: (1) the appropriate restrictions and level of Asberry's functionality based on her medical records as of September 14, 2012, using the work categories provided by the Department of Labor; (2) whether Asberry's condition had changed since September 14, 2012; and (3) whether Asberry should be subject to

any restrictions based on her prescription medications as of September 14, 2012. (*Id.* at 366). Dr. Lobel reviewed Asberry's file, including the IME conducted by Dr. DePorto, prior medical reports, and the October 2011 video surveillance. (*Id.* at 352-54). On August 6, 2013, he also faxed questions to Dr. Sambataro regarding the basis for her diagnosis and the need for the medications then prescribed for Asberry. (*Id.* at 324, 331-32, 354).

Dr. Lobel submitted his report on August, 14, 2013, not yet having heard back from Dr. Sambataro. (*Id.* at 354-55). Based on the medical file and his observations of the surveillance video, he concluded that (1) Asberry was capable of "light level occupation" subject to restrictions similar to those imposed by Dr. DePorto; (2) her condition had not worsened since September 2012 (*i.e.*, in the months after Hartford terminated her benefits); and (3) she would not have any restrictions or limitations based on the medications she was taking as of the time Hartford terminated her benefits. (*Id.* at 355). The very next day, August 15, 2013, Dr. Sambataro faxed a response to Dr. Lobel's earlier questions, in which she pointed to Asberry's muscle spasms, muscular atrophy, and chronic pain as the basis for her determination that Asberry could not undertake any employment. (*Id.* at 324, 326). On August 19, 2013, Dr. Lobel submitted an addendum to his August 14th report, summarizing Dr. Sambataro's response and concluding that, while Asberry suffers from pain resulting from an "extensively altered anatomy due to [the] surgery," and has some physical limitations, her condition did not preclude full-time employment. (*Id.* at 357).

On August 28, 2014, Debra McGee, one of Hartford's appeals specialists, performed a final review of Asberry's case. (*Id.* at 67-68). Her review included the reports from Drs. DePorto and Lobel, which she credited over Dr. Sambataro's assessment. (*Id.* at 68). McGee also noted that the employability analysis report had identified multiple positions that Asberry

4

could pursue given the restrictions identified by Dr. DePorto. (*Id.*). Finally, she explained that there was no inconsistency in the fact that the Social Security Administration ("SSA") still considered Asberry eligible for disability benefits because the SSA used a different set of eligibility criteria than those governing Asberry's plan and the SSA was not permitted to credit the opinions of a third-party physician over those of an applicant's treating physician, as she had. (*Id.*). Accordingly, Hartford affirmed the original denial of benefits. (*Id.*). This appeal followed shortly thereafter.

## LEGAL STANDARDS

### A. Summary Judgment Standard

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over an issue of material fact qualifies as genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca–Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs,*

373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 83 (2d Cir. 2004). When, as in this case, both sides move for summary judgment, the district court is "required to assess each motion on its own merits and to view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inferences in favor of that party." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011). Thus, "neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993). To defeat a motion for summary judgment, the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).

## B.  The Standard of Review for ERISA Claims

In reviewing a denial of benefits challenged under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), a court must apply a *de novo* standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case the court must apply an abuse of discretion standard. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989); *accord Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 82 (2d Cir. 2009). In order to trigger the abuse of discretion

standard, a benefit plan must use "clear language" to indicate that the administrators reserve discretion to interpret and apply the plan. *Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 108 (2d Cir. 2005); *accord Thurber v. Aetna Life Ins. Co.*, 712 F.3d 654, 658 (2d Cir. 2013). There is no dispute that the plan language does here (*see* Defs.' SOF ¶ 8; AR 35), and that is for good reason, as the Plan grants Hartford "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." (*Id.* at 35; *see id.* at 21). Accordingly, the Court reviews Hartford's decision for abuse of discretion, and "may overturn" its decision "only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 442 (2d Cir. 1995) (internal quotation marks omitted). "Substantial evidence is such evidence that a reasonable mind must accept as adequate to support the conclusion reached by the [decision maker and] requires more than a scintilla" of evidence "but less than a preponderance." *Miller v. United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995) (internal quotation marks omitted).

## DISCUSSION

The parties' cross-motions for summary judgment largely focus on the same set of issues, namely whether there is substantial evidence in the record supporting Hartford's denial of benefits and whether various determinations by Hartford were arbitrary and capricious. The Court will first address the record evidence on which Hartford relied in making its determination, considering the arguments raised by Plaintiff, before turning to Asberry's other objections.

**A. Substantial Evidence in the Record**

There is no dispute that it was Asberry's burden to establish that she was disabled within the meaning of the Plan. (AR 18-19). To do so, she was required to submit proof that she was

incapable of performing the essential duties of "any occupation" for which she was qualified by education, training, or experience, and with certain specified earning potential. (*Id.* at 22-23).

Upon review of the entire record, the Court finds that there is substantial evidence to support Hartford's conclusion that Plaintiff failed to do so. Three reports in the record are especially critical to that conclusion. The first is Dr. DePorto's IME. (*Id.* at 681-84). As noted, Dr. DePorto conducted an extensive physical examination, following which he noted the lasting effects of Asberry's surgery, including decreased range of motion (*id.* at 683-84), muscle spasms (*id.* 683), and her complaints of "[c]ervical, thoracic, and lumbar pain" (*id.* at 684). Nonetheless, he concluded that Asberry's physical limitations did not preclude all employment. (*Id.*). Specifically, based on Asberry's physical condition and the activities that she had been seen undertaking in the video surveillance, Dr. DePorto concluded that Asberry was capable of sedentary employment. (*Id.*). Notably, Dr. DePorto shared these findings with Asberry's treating physician, Dr. Sambataro, and while she disagreed with Dr. DePorto's bottom-line conclusion, she failed to dispute any of Dr. DePorto's objective findings or point to any limitations that Dr. DePorto had not observed in his independent examination. (*Id.* at 673).

The second critical document is the employability analysis report that Hartford commissioned based on Dr. DePorto's IME, which identified two positions that were consistent with Asberry's background, training, and physical limitations. (Defs.' SOF ¶ 57-59; AR 386-99). The third and final key document is the review of Asberry's medical record that Dr. Lobel performed as part of her administrative appeal. In conducting his review, Dr. Lobel considered Asberry's medical file, including Dr. DePorto's IME, the video surveillance, and responses submitted by Dr. Sambataro to his questions. (AR 352-54, 357). Based on all of that information, Dr. Lobel determined that Asberry was capable of a light-level occupation under the

8

work categories established by the Department of Labor, a conclusion similar to Dr. DePorto's. (*Id.* at 352-57).  Together, those three reports are more than sufficient to constitute substantial evidence supporting Hartford's decision.  *See Ingravallo v. Hartford Life & Acc. Ins. Co.*, 563 F. App'x 796, 799-800 (2d Cir. 2014) (summary order) (holding that the administrator's decision was supported by substantial evidence where two independent reviewers concluded that the individual was capable of work even though the treating physician disagreed); *Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 141 (2d Cir. 2010) (finding substantial evidence supported the denial of benefits where "the [administrator's] determination was supported by the reports of two independent doctors").

Asberry's primary response is that Hartford failed to adequately consider the pain from which she suffers as a result of the surgery.  Her argument takes two forms.  First, she contends that Hartford failed to adequately consider and respond to Dr. Sambataro's conclusion that Asberry's chronic pain rendered her incapable of any employment.  (Mem. Law Supp. Pl.'s Mot. Summ. J. (Docket No. 32) ("Pl.'s Mem.") 6-8; Pl.'s Mem. Law Opp'n Defs.' Mot. Summ. J. (Docket No. 33) ("Pl.'s Opp'n Mem.") 6-9).  Hartford, however, was not required to explain its decision to credit Drs. DePorto and Lobel over Dr. Sambataro.  *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) ("[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician.").  Indeed, the Second Circuit recently held that "[a]lthough an administrator may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician, courts may not impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Ingravallo*, 563 F. App'x at 799 (internal quotation marks omitted); *see Durakovic*, 609 F.3d at 141 (holding that the plan

administrator's decision was supported by substantial evidence even "[t]hough Durakovic submitted multiple medical reports supporting her disability" because the administrator had elected to credit the reports of two other independent doctors over Durakovic's physician). Here, Hartford decided to credit the views of Drs. DePorto and Lobel over those of Dr. Sambatora. (AR 68). The law does not require Hartford to provide any further explanation.[1]

Second, Asberry contends that Hartford failed to accord adequate weight to her own complaints of chronic pain. (Pl.'s Opp'n Mem. 9-14 (citing *Miles v. Principal Life Ins. Co.*, 720 F.3d 472, 486 (2d Cir. 2013); *Connors v. Connecticut Gen. Life Ins. Co.*, 272 F.3d 127, 136 (2d Cir. 2001)). Plaintiff is correct that Hartford may not "dismiss complaints of pain as legally insufficient evidence of disability," *Connors*, 272 F.3d at 136, but that is not what Hartford did here. Both of the medical reports upon which Hartford relied acknowledged Asberry's complaints of chronic pain, but concluded that physical evidence from Dr. DePorto's examination and the activities that she had performed during the surveillance indicated that she was capable of employment, albeit with certain restrictions. (AR 67-68, 352-56, 501-04). Hartford expressly acknowledged Asberry's chronic pain several times, including in its final decision to deny benefits, but nonetheless concluded that the objective evidence suggested that her disability did not preclude her from all potential employment. (*Id.* at 80-81, 199-200).

---

[1] In any event, Hartford had ample reason not to credit Sambataro's evaluation. Among other things, Dr. Sambataro's opinions were comprised largely of conclusory assertions about Asberry's capabilities with little or no discussion of the medical bases for her conclusions. (*See, e.g.*, AR 539 (stating Dr. Sambataro's disagreement with Dr. DePorto's conclusion, but failing to identify any test results or flaws with Dr. DePorto's methodology)). Put simply, the Court cannot say that Hartford acted unreasonably in crediting Dr. DePorto's report, with its detailed explanation of the medical basis for his assessment, (*see* AR 683-84), over Dr. Sambataro's comparatively conclusory statements.

That is a far cry from the cases cited by Asberry, in which the plan administrator "failed to either assign any weight to [the plaintiff's subjective symptoms] or to provide specific reasons for its decision to discount them." *Miles*, 720 F.3d at 487; *see id.* (stating that an administrator "must do more than simply point to the subjective nature of the evidence when denying [a] claim"); *see also Connors*, 272 F.3d at 136-37 (reversing the district court's decision because it held, as a matter of law, that the subjective evidence was legally insufficient to support a claim). To be sure, Hartford could have explained its decision to credit the objective evidence (the investigator's interview, the surveillance evidence, and Dr. DePorto's physical examination) over Asberry's subjective experience of pain in more detail than it did. But it is plainly permitted to have made that decision, and its failure to provide a more detailed explanation is not a basis to disturb its ultimate determination. *See, e.g.*, *Martucci v. Hartford Life Ins. Co.*, 863 F. Supp. 2d 269, 278 (S.D.N.Y. 2012); *Plitnick v. Fussell*, 601 F.Supp.2d 470, 486 (D. Conn. 2009); *Parisi v. UnumProvident Corp.*, No. 03-CV-1425 (DJS), 2007 WL 4554198, at *14 (D. Conn. Dec. 21, 2007) ("[T]he court cannot find that [the administrator's] decision was arbitrary and capricious because it credited the objective evidence, which was supplied by [the plaintiff's] doctors, over [the plaintiff's] subjective complaints of pain.").

Nor does the presence of some objective evidence consistent with Asberry's symptoms render Hartford's denial of benefits arbitrary and capricious or unsupported by substantial evidence. (Pl.'s Mem. 6-8; Pl.'s Opp'n Mem. 6-8). Dr. Sambataro did at times (but only at times) note that Asberry experienced general muscular atrophy as well as scapular winging (AR 513-16), but those findings were inconsistent with the comprehensive physical examination performed by Dr. DePorto (*id.* at 683-84), and Dr. Sambataro did not contradict any of Dr.

11

DePorto's objective findings when she reviewed his report (*id.* at 539). Accordingly, Asberry's pain, even if significant, is not a sufficient basis in itself to overturn Hartford's decision.

## B. Asberry's Other Objections

Asberry's memoranda raise many other objections to Hartford's determination, not all of which warrant discussion. Instead, the Court will address the most meritorious of Plaintiff's objections, which are organized thematically below. None is sufficient — individually or in combination — to show that Hartford's decision was arbitrary and capricious.

### *1. The Medical Reviews*

First, Asberry identifies several alleged flaws in how Hartford presented Asberry's case to Dr. Lobel for his peer review. She contends that by asking Dr. Lobel three specific questions, Hartford unfairly constrained and prejudiced his review of her file. (Pl.'s Mem. 11-13). The Court, however, discerns no impropriety in these questions. Asberry mischaracterizes them in suggesting that they were intended to "limit" Dr. Lobel's inquiry. Instead, it appears that McGee requested that Dr. Lobel specifically address three issues necessary to her resolution of Asberry's appeal; nothing in those questions suggests that Dr. Lobel was somehow constrained or prevented from giving Asberry's file a thorough review. (AR 366). Asberry also claims that Hartford biased Dr. Lobel's review by providing him with a copy of Dr. DePorto's IME. (Pl.'s Mem. 12). That argument is also unpersuasive. As Defendants note, the regulation that Plaintiff cites in support of her argument, 29 C.F.R. § 2560.503-1(h)(3)(ii), requires the administrator, Hartford in this case, not to defer to its initial determination. (Defs.' Mem. Law Opp'n Pl.'s Mot. Summ. J. (Docket No. 37) ("Defs.' Opp'n Mem.") 16). It says nothing about the documents medical experts can review when conducting an examination for an appeal. In addition, there is no evidence in the record that Hartford's appeals process affords any deference

to the initial review. Hartford appears to have provided Dr. DePorto's report because it was an integral component of her medical file as of September 2012. Asberry's third argument — that Dr. Lobel is not qualified to conduct a peer review (Pl.'s Mem. 10) — is entirely without merit. The record contains his Georgia license number and lists his certifications (AR 368), and she provides no reason to doubt the authenticity of those credentials.

### 2. *The Employability Analysis Report*

Next, Asberry argues that the employability analysis report is not based on substantial evidence because it did not take into account the restrictions on reaching and other limitations prescribed by Dr. Lobel based on his review of Asberry's record. (Pl.'s Opp'n Mem. 17-19). Her argument is unavailing. The employability analysis report was written in 2012 (AR 386), as part of Hartford's initial review of Asberry's eligibility, while Dr. Lobel's report was commissioned in connection with Asberry's appeal of that determination (*id.* at 360). Asberry cites to no authority requiring an administrator to conduct an additional employability analysis report on appeal when the initial report is consistent with the IME. In any case, one of the positions identified in the employability analysis report requires only occasional reaching (*id.* at 393), which is consistent with Dr. Lobel's restrictions (*id*. at 367). Accordingly, Asberry has failed to show that Hartford acted arbitrarily and capriciously in relying on the review to support its denial of benefits.[2]

---

[2] Asberry also argues that Hartford "deceptive[ly] and unfair[ly]" misled her by suggesting that it relied on a 2013 employability analysis report, when in fact no such report existed. (Pl.'s Mem. 19-21). The only support for Asberry's argument is a reference in the adverse benefits determination to a report prepared on "8/21/13." (*Id.* at 19 (quoting AR 200)). That reference, however, was plainly a typo, as Hartford's employability analysis report was prepared on August 21, *2012*. (AR 386). It is clear from the record that it was the 2012 report on which Hartford relied in reaching its adverse benefit determination. (*See, e.g.*, *id.* at 80; *see also id.* at 67-80 (listing the steps taken as part of Hartford's review of Asberry's file without any reference to a

13

### *3. Hartford's Use of the Video Surveillance*

Next, Asberry attacks several aspects of the video surveillance and its role in Hartford's decision-making process. First, she contends that the activities captured on the video were consistent with her disability diagnosis and, in any case, that the videos reviewed by Hartford and Drs. DePorto and Lobel captured too small a percentage of the day to constitute substantial evidence supporting Hartford's decision. (Pl.'s Opp'n Mem. 14-16). The video surveillance captures Asberry cleaning up outside her apartment, carrying packages and grocery bags, and walking her dog, among other activities (AR 424-30), and Drs. DePorto and Lobel considered those activities as evidence that Asberry could pursue limited employment (*id.* at 353-55, 684). Asberry's and Dr. Sambataro's contrary views notwithstanding, Hartford was entitled to credit the opinions of Drs. DePorto and Lobel, especially where their opinions were based on a physical examination in addition to the video footage. *See Ingravallo*, 563 F. App'x at 799; *Durakovic*, 609 F.3d at 141. Nor does the fact that the surveillance footage represents only a small part of the day necessarily render inappropriate Hartford's reliance on the footage. The surveillance team monitored Asberry over the course of two days and appears to have videotaped events that it determined were most salient to her disability status. Asberry cites no authority *requiring* them to videotape a longer period under these circumstances.

Asberry also suggests that Hartford's reliance on the video footage was erroneous because the activities it captures are unrelated to her ability to work. (Pl.'s Mem. 18-19 (citing *Chan v. Hartford Life*, 2004 WL 2002988, at *26-28 (S.D.N.Y. Sept. 8, 2004) and *Winter v.*

---

second employability analysis in 2013)). Asberry's attempt to "make much ado about nothing more than a 'typo,'" *SSP Capital Partners, LLC v. Mandala, LLC*, 715 F. Supp. 2d 443, 449 (S.D.N.Y. 2009), provides no reason to question Hartford's review of her file.

*Hartford Life & Acc. Ins. Co.*, 309 F. Supp. 2d 409, 415 (E.D.N.Y 2004)).  *Chan*, however, turned on the Court's conclusion that the activities captured in the video footage "d[id] not substantially address her ability to perform her prior occupation."  *Chan*, 2004 WL 2002988, at *9.  By contrast, Asberry's ability to perform the activities described in the video (cleaning outside her apartment, carrying boxes, walking her dog, and attending a meeting) are plausibly relevant to her prior employment, the potential employment listed in the employability analysis report, and the extent of her disability.  *Chan* is therefore inapt.  And *Winter* held only that the surveillance footage in that case, about which that Court apparently had concerns, was not sufficient to constitute substantial evidence, especially because the defendant's doctor had not personally examined the plaintiff.  *See* 309 F. Supp. 2d at 415.  Here, Hartford relies on much more than the video footage, including a physical examination by one of its doctors.  Asberry therefore has not identified any error in Hartford's use of the surveillance footage.

### 4. *The Propriety of Hartford's Reconsideration of Asberry's Claim*

Relying on *Connors*, Asberry also claims that is was improper for Hartford to deny benefits absent evidence in the record showing that her condition had improved.  (Pl.'s Mem 8-10 (citing *Connors*, 272 F.3d at 136)).  Her reliance on *Connors* is misplaced.  *Connors* held that the district court had erred by not recognizing that the administrator had previously approved the claimant's disability benefits and that the termination of those benefits was in response to a change in the administrator's policy rather than an improvement in the claimant's medical condition.  By contrast, Hartford began its investigation into Asberry's status after receiving information that suggested to Hartford that Asberry was capable of performing tasks that were potentially inconsistent with her disability status.  (AR 139).  And while Asberry is correct that she had disclosed some of the activities that triggered Hartford's review and that were captured

in the video surveillance (Defs.' SOF ¶ 21; AR 160-62, 166, 901), Hartford apparently interpreted one of her disclosures as possibly inconsistent with her disability (*see* Defs.' Mem. 3-4; AR 139). *Connors* does not prevent an administrator from reviewing a claimant's eligibility under these circumstances, especially where, as here, the arbitrary-and-capricious standard of review applies. *See Testa v. Hartford Life Ins. Co.*, No. 08-CV-816 (FB) (RER), 2011 WL 795055, at *10 (E.D.N.Y. Mar. 1, 2011) (noting that this aspect of *Connors* was inapplicable in part because *Connors* involved *de novo* review), *aff'd*, 483 F. App'x 595 (2d Cir. 2012). Asberry points to no other evidence that Hartford's decision was a result of a change in policy.[3]

## C. Hartford's Conflict of Interest

Finally, the Court addresses the weight that should be accorded to Hartford's conflict of interest. Where, as here, a company "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket . . . , this dual role creates a conflict of interest . . . that a reviewing court should consider . . . as a factor in determining whether the plan administrator has abused its discretion in denying benefits." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). The presence of a conflict does not, however, change the standard of review. *See id*. at 115-16. Instead, it is a factor in the court's review of the administrator's

---

[3] Given that Hartford reevaluated Asberry's eligibility, there is no merit to her suggestion that Hartford erred by denying her disability benefits under the Plan while the SSA continued to deem her eligible for social security disability benefits. (Compl. (Docket No. 1) ¶ 53). The SSA's determination was made in 2006 — when Hartford also deemed Asberry eligible for benefits. (AR 200). Hartford, however, conducted an additional assessment in 2012, namely the employability analysis report, which evaluated factors not considered by the SSA, including whether Asberry's "transferable skills" make alternative employment feasible. (*See* AR 200, 386-87; Defs.' Mem. Law Supp. Mot. Summ. J. (Docket No. 27) ("Defs.' Mem.") 18). As noted, McGee addressed the SSA's assessment in her final determination, noting that there was no inconsistency because the SSA uses different criteria and also is not permitted to credit the opinions of third-party physicians over the claimant's treating physician. (AR 68, 200). Accordingly, the Court concludes that there was no conflict between the SSA's 2006 assessment and Hartford's 2012 determination that Asberry no longer qualified for disability benefits.

16

decision, with the weight accorded to that factor varying depending on the steps, if any, that the administrator took to mitigate the conduct. *Id.* at 117-18. "The weight properly accorded a *Glenn* conflict varies in direct proportion to the 'likelihood that the conflict affected the benefits decision.'" *Durakovic*, 609 F.3d at 139 (quoting *Glenn*, 554 U.S. at 117). "No weight is given to a conflict in the absence of any evidence that the conflict actually affected the administrator's decision." *Id.* (citing *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 83 (2d Cir. 2009)).

In this case, the parties agree that Hartford is subject to a "structural" conflict of interest because it both administers the plan and pays out the benefits. (Defs.' Mem. 20; Pl.'s Opp'n Mem. 20). Hartford, however, points to several steps that it took to mitigate the conflict. (Defs.' Mem. 21). They included ensuring that, in making her final determination on Asberry's appeal, McGee did not speak with the person who had made the initial recommendation, the specialist's supervisor, or anyone who worked in Hartford's financial or underwriting departments. (Decl. Debra L. McGee (Docket No. 25) ("McGee Decl.") ¶¶ 5-6). In addition, McGee has no incentive — whether in terms of performance evaluations, compensation, or other benefits — to deny claims on appeal. (Defs.' Mem. 21; McGee Decl. ¶ 7). Courts within this Circuit have held that "ensuring that an examiner's compensation is not determined by reference to his or her record in denying claims" is sufficient to "wall-off" the claims examiners from the finance department, thereby mitigating the conflict of interest. *Fortune v. Grp. Long Term Disability Plan for Employees of Keyspan Corp.*, 637 F. Supp. 2d 132, 144 (E.D.N.Y. 2009), *aff'd*, 391 F. App'x 74 (2d Cir. 2010); *see Bendik v. Hartford Life Ins. Co.*, No. 03-CV-8138 (LAP), 2010 WL 2730465, at *5 (S.D.N.Y. July 12, 2010), *aff'd*, 432 F. App'x 24 (2d Cir. 2011) (finding that any conflict of interest "deserves little weight due to the measures Hartford took to promote accuracy," including separating the claims examiners from the finance department); *Schnur v.*

17

*CTC Commc'ns Corp. Grp. Disability Plan*, No. 05-CV-3297 (RJS), 2010 WL 1253481, at *11 (S.D.N.Y. Mar. 29, 2010), *aff'd*, 413 F. App'x 377 (2d Cir. 2011) (affording little weight to the conflict where the claims administrators where "walled off" from the financial and underwriting divisions); *see also Glenn*, 554 U.S. at 117 (listing the "walling off [of] claims administrators from those interested in firm finances" as an example of a procedure that would help mitigate a conflict of interest). Moreover, Hartford took other steps that courts within this Circuit have recognized as helping to mitigate any conflict of interest, including commissioning Dr. DePorto's IME as well as Dr. Lobel's peer review, and consulting with Asberry's treating physician, Dr. Sambataro. (AR 324, 352-57, 555, 681-84). *St. Onge v. Unum Life Ins. Co. of Am.*, 559 F. App'x 28, 31-32 (2d Cir. 2014) (summary order).[4]

      In arguing that Hartford's conflict should be given greater weight, Plaintiff points to the affidavit of a former Hartford employee, Sandra Carter, stating that claims department employees regularly received an e-mail stating the company's overall profitability and a separate e-mail informing employees of their annual bonus, which employees understood was a function of the company's overall profitability. (AR 528; Pl.'s Opp'n Mem. 22-23). Carter's affidavit, however, does not justify giving significant weight to the conflict of interest in this case. After all, it should come as no surprise that an employee's variable compensation will at least in part be a function of her employer's overall profitability, which is all that the Carter affidavit suggests. McGee's compensation may have been marginally affected by her decisions in that a denial of an individual claim might incrementally increase Hartford's profitability, but that

---

[4]     Hartford asserts — and Asberry does not dispute — that Dr. DePorto's IME is similar to the functional capacity evaluation the court considered in *St. Onge*, 559 F. App'x at 30-32, with the primary difference being that the functional capacity evaluation does not need to be performed by a medical professional. (*See* Def.'s Opp'n Mem. 7 & n.4).

18

relationship is far too indirect and attenuated to constitute an appreciable financial incentive to deny claims. In addition, Carter worked in Hartford's claims department from 2004 until 2006. (AR 527 ¶ 2). The investigation into Asberry's eligibility for benefits did not begin until 2011, five years after Carter left Hartford's claims department. (Defs.' Mem. 4; AR 139-40). Carter's experience therefore has little or no relevance to the procedures in place when McGee reviewed Asberry's application. *See Topalian v. Hartford Life Ins. Co.*, 945 F. Supp. 2d 294, 361-62 (E.D.N.Y. 2013) ("[T]he Carter Affidavit pertains to a time period that is not probative of Hartford's claims administration practices during the denial of plaintiff's benefits claim."). Accordingly, the Court places only minimal weight on Hartford's conflict of interest, *see Durakovic*, 609 F.3d at 139, and it does not provide a basis to disturb Hartford's termination of benefits.

## CONCLUSION

The Court has considered Asberry's remaining arguments and finds that they are without merit, substantially for the reasons stated in Hartford's memoranda. Accordingly, and for the reasons stated above, Hartford's motion for summary judgment is GRANTED and Asberry's motion for summary judgment is DENIED. Further, Asberry's requests for attorney's fees and a retroactive reinstatement of benefits — both of which are predicated on a ruling in her favor on the long-term disability benefits issue (*see* Pl.'s Opp'n Mem. 23-25 (seeking such relief "[s]hould" Plaintiff prevail on the long-term disability issue)) — are denied as moot. The Clerk of Court is directed to terminate Docket Nos. 18 and 24 and to close the case.

SO ORDERED.

Date: February 26, 2015
New York, New York

JESSE M. FURMAN
United States District Judge